IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOURCING MANAGEMENT, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.   3:14-cv-2552 |
| | § | |
| SIMCLAR, INC., | § | |
| CONCURRENT MANUFACTURING | § | |
| SOLUTIONS, LLC, | § | |
| BALMORAL FUNDS LLC, | § | |
| and JANE DOES 1–10, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

---

## PLAINTIFF SOURCING MANAGEMENT, INC.'S COMPLAINT

---

Plaintiff Sourcing Management, Inc. ("SMI") for its Complaint against Defendants Simclar, ("Simclar"), Inc., Concurrent Manufacturing Solutions, LLC ("Concurrent"), Balmoral Funds, LLC ("Balmoral"), and Jane Does 1–10 (collectively "Defendants") alleges the following.

## I.
## INTRODUCTION

1.    SMI requests that this Court (1) set aside Defendant Simclar's fraudulent conveyance of assets to Defendants Balmoral and Concurrent, and (2) subject those assets to SMI's Judgment.

## II.
## PARTIES

2.      Plaintiff is a Texas corporation having its principal office located at 2040 Hillcroft Drive, Rockwall, Texas 75087.

3.      Defendant Simclar, Inc. is a Florida corporation, having its principal office located at 2230 West 77th Street, Hialeah, Florida 33016.

4.      Defendant Balmoral Funds, LLC is a Delaware limited liability company, having its principal office located at 11150 Santa Monica Blvd, Los Angeles, CA 90025-3380, United States.

5.      Defendant Concurrent Manufacturing Solutions, LLC is a Delaware limited liability company, having its principal office located at 2230 West 77th Street, Hialeah, Florida 33016.

## III.
## JURISDICTION

6.      This Court has diversity jurisdiction 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

7.      This Court is the proper venue under 28 U.S.C. § 1391(a)(2). Plaintiff is located in the Northern District of Texas and the case involves business activity and events occurring almost exclusively in this jurisdiction.

## IV.
## BACKGROUND

8.      Plaintiff is a small Texas corporation engaged as a manufacturer's outside sales representative for manufacturing corporations. As such, it endeavors to manage accounts and to

generate sales for various manufacturers in various locations, including the Defendant Simclar in Florida.

9.     On or about December 28, 2005, SMI and Simclar entered into an Independent Sales Representative Agreement (the "Agreement"), effective January 2006.

10.    In 2011, following a dispute between the parties over the non-payment of commissions and Simclar's refusal to provide documentation concerning certain sales, Simclar gave SMI notice of termination under the Agreement. The effective termination date of the Agreement was November 30, 2011.

11.    On October 10, 2011 SMI filed suit against Simclar in the Northern District of Texas. After in depth discovery between the parties, SMI filed a motion for summary judgment. Simclar failed and refused to file a Response to SMI's Motion for Summary Judgment. The court ruled in favor of SMI and rendered judgment against Simclar in the amount of $3,753,369.94 along with reasonable attorneys' fees. (Ex. A, Order Granting Plaintiff's Motion for Summary Judgment and Final Judgment).

12.    The court ordered Simclar to show cause why it did not respond. Simclar informed the court that Balmoral had acquired all of Simclar's assets in a "private sale" pursuant to the Uniform Commercial Code and that Simclar had "ceased all business operations." (Ex. B, Defendant Simclar Inc.'s Response to Show Cause Order).

13.    However, contemporaneous with Simclar's filings, Simclar advised its customers that it was merely operating under a new name. Simclar's management remained intact. Simclar used the same operating account. (Ex. C). Moreover, it retained the same employees, locations, and phone numbers. (*Id.*; Ex. D, Balmoral Press Release).

14.     A review of documents that Simclar produced during discovery show the private sale and conveyance to Balmoral occurred after at least six months of due diligence. The secret plan for Balmoral to acquire the assets, code named "Project Heat," had been in the works throughout 2012. (Ex. E).  Exhibit E—Bates labeled Simclar 9162-9175—details Project Heat discussions between Simclar, Balmoral (Robin Nourmand), and Mark Allen. In that document, the parties identified total assets of over $44 million against bank debt of $9,309,000[1] owed to Bank of Scotland.

15.     It was the alleged foreclosure of the $9 million line of credit which was the impetus for the transfer of over $44 million of assets to Balmoral. This transfer was made at a time when Simclar was undisputedly a debtor (as evidenced by SMI's claims and the final judgment entered in the underlying case), owing $3,753,369.94 to SMI. The transfer was clearly collusive and made for the purpose of avoiding debts to creditors such as SMI.

16.     Without notice to its creditors or any attempt to address its known liabilities, Simclar transferred its assets to Balmoral on October 18, 2012. The company immediately began operations as Concurrent Manufacturing Solutions, LLC. The transition to a new name is clearly the result of collusive activity between Simclar's officers, Simclar's lender, and the claimed current owner of Simclar, Balmoral Funds LLC, by and through Concurrent Manufacturing Solutions, LLC, a special purpose entity set up for the acquisition.

17.     Simclar received less than reasonably equivalent value in the transfer.

---

[1]  Simclar's Response to Show Cause Order asserts Bank of Scotland was owed $17 million. This may be due to addition of the "Long Term Debt" line to the "Line of Credit" number. (See Simclar 9174 in Exhibit E).  Regardless, a private sale foreclosure of over $44 million of assets to satisfy $17 million of debt is one of the classic "Badges of Fraud."

# V.

## CLAIMS FOR RELIEF

### COUNT I

18.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–17 as though set forth fully herein.

19.     Rule 69(a)(1) of the Federal Rules of Civil Procedure directs the court to look to the law of the host state to determine the procedure for "proceedings supplementary to and in aid of judgment . . ." Likewise, Rule 64(a) states that every state law remedy (of the state where the court is located) is available to secure satisfaction of a potential judgment.

20.     The Texas Civil Practices & Remedies Code details remedies available to secure or satisfy a judgment.

21.     In Texas, it has long been held that a creditor in the same suit may recover judgment on its demand and also have a fraudulent conveyance set aside.[2] However, the plaintiff creditor must bring a separate action which joins the transferee and any other necessary parties as well.[3]

22.     The Texas Business and Commerce Code version of the Uniform Fraudulent Transfer Act is found in Chapter 24. TEX. BUS. & COM. CODE § 24.

23.     As stated above, SMI was a creditor to Simclar at the time of the private foreclosure "sale." The foreclosure sale is a fraudulent transfer if the transfer occurred for less than "reasonably equivalent value." *See* TEX. BUS. & COM. CODE § 24.006(a); *see also* Florida Code § 726.106.

---

[2] *Perkins v. Union Packing Co.*, 104 S.W.2d 80 (Tex. Civ. App.—El Paso 1937, writ denied); *Waddel v. Williams*, 37 Tex. 35, 1873 WL 7271 (1873).
[3] TEX. BUS. & COM. CODE § 24.008.

24.     The problem, of course, is the private sale which the parties chose to use.   A private sale, unlike a public sale, is not intended to gain the highest price, but merely to assure a conveyance to the buyer that was going to retain Simclar's management.

25.     The transfer of collateral to the bank, six months of secret "Project Heat" due diligence, the private foreclosure sale, the conveyance to the entity that retained existing management, and the grossly inadequate consideration Simclar received for the transfers are all "Badges of Fraud."

## COUNT II

## ACTUAL FRAUDULENT TRANSFER

26.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–25 as though set forth fully herein.

27.     Through its fraudulent scheme, and as detailed above, Simclar transferred valuable assets to Balmoral Funds, LLC, and/or Concurrent Manufacturing Solutions, LLC.

28.     The transfers were made to or for the benefit of Simclar, its officers and directors, and its current management.

29.     Simclar made the transfer with the actual intent to hinder, delay, or defraud the creditors or future creditors of Simclar.

30.     As a result of the transfer, the Simclar creditors have been harmed.

31.     Under Texas's Uniform Fraudulent Transfer Act and Florida's Uniform Fraudulent Transfer Act, and/or other applicable law, SMI is entitled to avoid the transfer and to recover property or value of the property transferred to Concurrent, Concurrent's affiliates, or third parties for the benefit of Simclar or Concurrent, with interest.

32.     Simclar's conduct set forth herein was fraudulent, wanton, malicious, or willful in complete disregard of SMI's rights.  Accordingly, SMI seeks relief in the form of exemplary or punitive damages in an amount to be determined at trial.

## COUNT III

## CONSTRUCTIVE FRAUDULENT TRANSFER

33.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–32 as though set forth fully herein.

34.     The transaction between Simclar, Balmoral, and Concurrent involved less than reasonably equivalent value from Balmoral, Concurrent, or any of their affiliates in exchange for the transaction.

35.     The transfer was made to or for the benefit of Simclar, its officers and directors, and its management.

36.     The transfer was made by Simclar when it was engaged or about to be engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction. In other words, Simclar completed the transaction while entry of the judgment was pending.

37.     Simclar was insolvent at the time or became insolvent as a result of the transfer.

38.     At the time of the transfer, Simclar intended to, believed it would, or reasonably should have believed it would incur debts beyond its ability to pay as they became due (i.e., SMI's judgment in the amount of $3,753,369.94).

39.     As a result of the transfer, Simclar's creditors have been harmed.

40.     Under Texas's Uniform Fraudulent Transfer Act and Florida's Uniform Fraudulent Transfer Act, and/or other applicable law, SMI is entitled to avoid the transfer and to

recover, with interest, the property or the value of the property transferred to Balmoral and Concurrent, their affiliates, or third parties for the benefit of Simclar, Balmoral, or Concurrent.

41.     Simclar's conduct set forth herein was fraudulent, wanton, malicious, or willful in complete disregard of SMI's rights.  Accordingly, SMI seeks relief in the form of exemplary or punitive damages in an amount to be determined at trial.

## COUNT IV

## SUCCESSOR LIABILITY

42.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–41 as though set forth fully herein.

43.     Under Florida Law, a successor company may be liable for its predecessor's liabilities.[4]

44.     In the transaction between Simclar, Balmoral, and Concurrent, Balmoral and Concurrent impliedly assumed SMI's Judgment against Simclar in the amount of $3,753,369.94. Balmoral and Concurrent failed to repudiate the assumption of liability for the judgment in the asset purchase agreement.

45.     Balmoral and Concurrent's representations and conduct indicate an intention to assume Simclar's liabilities (e.g., conducting a private foreclosure sale to clear Simclar's debts to the Bank of Scotland). After six months of due diligence, Balmoral and Concurrent were aware of Simclar's liability for the SMI Judgment. Failure to expressly repudiate assumption of Simclar's liability implicitly shows an intention to assume it.

46.     The transaction between Simclar, Balmoral, and Concurrent was a de facto merger. Balmoral and Concurrent absorbed Simclar when they acquired Simclar's assets in a

---

[4] *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1049–51 (Fla. 1982).

private sale but retained Simclar's management and employees, retained the same location and phone numbers, and used the same operating account.

47.     Simclar's shareholders were or became members of Balmoral or Concurrent.

48.     Simclar, per its own admission, "ceased all business operations."

49.     Balmoral and Concurrent assumed the liabilities and obligations of Simclar to continue normal business operations, uninterrupted.

50.     Concurrent is a mere continuation of Simclar. It is essentially the same corporate entity, just under a different name. Simclar changed form, but it did not change substance, assuring its customers that it was simply doing business under a new name.

51.     Simclar's conduct set forth herein was fraudulent, wanton, malicious, or willful in complete disregard of SMI's rights.  Accordingly, SMI seeks relief in the form of exemplary or punitive damages in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

52.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–51 as though set forth fully herein.

53.     Balmoral and Concurrent were unjustly enriched at SMI's expense.

54.     Through the fraudulent scheme to transfer Simclar's assets without any of the liabilities, and as detailed above, the Defendants caused the actual transfer of assets.  Concurrent and Balmoral benefited directly from the transfer of assets described above.

55.     Concurrent and Balmoral's retention of the above-mentioned benefits would violate fundamental principles of justice, equity, and good conscious.

56.     As a result of Concurrent and Balmoral's unjust enrichment, equity and good conscience require appropriate restitution to SMI.

## VI.
## PRAYER FOR RELIEF

**WHEREFORE,** SMI prays for relief and judgment as follows:

Awarding compensatory damages in favor of SMI against Simclar, Concurrent, Balmoral and Jane Does 1–10, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proved at trial, including interest thereon;

Awarding appropriate restitution to SMI from Concurrent, Balmoral and Jane Does 1–10 for Defendants' unjust enrichment;

Awarding SMI punitive and/or exemplary damages where such damages are available;

Awarding SMI reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

Simclar clearly owes the judgment debt to SMI and because the transfer of Simclar's assets to Balmoral and Concurrent was for far less than a reasonably equivalent value, and bears the mark of collusion, Sourcing Management, Inc. requests that this court use its equitable powers to set aside the fraudulent transfer actions related to judgment debtor Simclar and to submit the transferred assets to Plaintiff's Judgment in the amount of $3,753,369.94.

DATED this 16th day of July, 2014.

Respectfully submitted,

By:*/s/ Peter J. Harry*

    Peter J. Harry
    State Bar No. 09134600
    pete.harry@huschblackwell.com
    Buffey E. Klein
    State Bar No. 24032515
    buffey.klein@huschblackwell.com

**HUSCH BLACKWELL LLP**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 *facsimile*
ATTORNEYS FOR THE PLAINTIFF