IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOURCING MANAGEMENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-2552-L** |
| | § | |
| SIMCLAR, INC., CONCURRENT | § | |
| MANUFACTURING SOLUTIONS, LLC, | § | |
| BALMORAL FUNDS, LLC and JANE | § | |
| DOES 1-10, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Balmoral Funds, LLC and Concurrent Manufacturing Solutions, LLC's

Motion to Dismiss, filed September 11, 2014 (Doc. 13). Having considered the motion, response,

reply, pleadings, jurisdictional evidence, record, and applicable law, the court **denies** Balmoral

Funds, LLC and Concurrent Manufacturing Solutions, LLC's Motion to Dismiss.

## I.      Background Facts and Procedural History

This is the second of two civil actions filed in the Northern District of Texas by Plaintiff

Sourcing Management, Inc. ("Plaintiff" or "SMI") against Defendant Simclar, Inc. ("Simclar"). The

earlier action (*Simclar I*), resulted in a judgment in favor of Plaintiff against Simclar in the amount

of $3,753,369.94, along with reasonable attorney's fees. Plaintiff now seeks to recover the judgment

from two companies, Balmoral Funds, LLC ("Balmoral"), and its subsidiary Defendant Concurrent

Manufacturing Solutions, LLC ("Concurrent"), alleging they colluded with Simclar to effect a

transfer of Simclar's assets under the guise of a private foreclosure sale to prevent Plaintiff from

collecting on Simclar's debt. Plaintiff seeks a declaration that the transfer of Simclar's assets to

Balmoral and Concurrent was a fraudulent transaction in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and requests that the court set aside the fraudulent transfers and submit the transferred assets to Plaintiff's judgment in the amount of $3,753,369.94. Plaintiff also seeks to impose successor liability on Concurrent and Balmoral for Simclar's obligations, and brings a claim for unjust enrichment.

For their part, Balmoral and Concurrent contend that the transfer at issue was a routine foreclosure under Article 9 of the Uniform Commercial Code executed by Plaintiff's secured creditor, the Bank of Scotland, which had a first priority interest in all of Simclar's assets, and that it exercised its default remedies with respect to its collateral. Balmoral and Concurrent move to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that the Article 9 foreclosure sale did not involve the transfer of assets, as defined by TUFTA, and that Plaintiff's allegation are otherwise deficient under controlling case law. Additionally, as a threshold matter, Balmoral moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The court now sets forth the relevant facts, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007).

### A.      The Parties to this Dispute

Plaintiff is a Texas corporation headquartered in Rockwall, Texas. Pl.'s First Am. Compl. ¶ 2 ("Compl."). Plaintiff is an outside sales representative for manufacturing corporations, and as such manages accounts and generates sales for various manufacturers, including Defendant Simclar. *Id.* ¶ 9. Defendant Simclar, now dissolved, was at all relevant times a Florida corporation with a principal place of business in Hialeah, Florida. *Id.* ¶ 3. Concurrent is a Delaware limited liability

company in Hialeah, Florida.  *Id.* ¶ 5.  Balmoral is a California limited liability company in Los

Angeles, California.  *Id.* ¶ 4.

### B.     The Actions Giving Rise to this Dispute

This case stems from a prior litigation in the Northern District of Texas between Plaintiff and

Defendant Simclar.  *See Sourcing Management, Inc. v. Simclar, Inc.*, 3:11-cv-2663-F ("*Simclar I*").

*Simclar I* arose from a dispute between the parties over Simclar's nonpayment of commissions in

breach of the parties' sales representative contract.  Compl. ¶¶ 10-11.  On October 10, 2011, Plaintiff

sued Simclar for violating the terms of the contract.  *Id.* ¶ 12.  Following discovery, Plaintiff filed

its motion for summary judgment.  *Id.*  When Simclar failed to respond, the court issued an order

to show cause why the pending summary judgment motion should not be granted.  *Id.* ¶ 13.  On

October 30, 2012, Simclar filed a response to the show cause order, asserting as follows:

> Now comes Defendant Simclar, Inc., by and through counsel, and in response
> to the Court's Order to Show Cause (Doc. No. 39) notifies the Court and opposing
> counsel that Simclar will not be filing a response to Plaintiff Sourcing Management,
> Inc.'s Motion for Summary Judgment (Doc. No. 36).  Simclar was in default under
> more than $17 million in loan obligations to its lender, the Bank of Scotland (the
> "Bank"), which had a first priority security interest in all of the assets of Simclar and
> its subsidiaries.  On October 18, the Bank exercised its default remedies with respect
> to its collateral and sold the assets of Simclar and its subsidiaries in a private sale
> under Article 9 of the Uniform Commercial Code for an amount substantially less
> than the outstanding indebtedness.  Effective upon the sale, Simclar ceased all
> business operations.

Ex. B to Compl. (Simclar, Inc.'s Response to Show Cause Order).  On November 19, 2012, United

States District Judge Royal Furgeson ruled in favor of Plaintiff, finding that Simclar breached the

parties' contract, and rendered judgment against Simclar in the amount of $3,753,369.94, along with

reasonable attorney's fees.  Ex. A to Compl. (Order Granting Plaintiff's Motion for Summary

Judgment and Final Judgment).  Plaintiff, however, has been unable to collect any portion of this judgment.

Plaintiff alleges it has been unable to collect any of its $3,753,369.94 judgment because of a fraudulent transfer of assets.  Plaintiff alleges Defendants colluded to transfer Simclar's assets to Balmoral and Concurrent under the guise of a private foreclosure sale just prior to the entry of judgment by Judge Furgeson in *Simclar I*.  Plaintiff alleges the transfer of assets rendered Simclar insolvent and has prevented Plaintiff from collecting on the judgment.  More specifically, Plaintiff alleges that:

> 15. A review of the documents that Simclar produced during discovery show[s] the private sale and conveyance to Balmoral occurred after at least six months of due diligence.  The secret plan for Balmoral to acquire the assets, code named "Project Heat," had been in the works throughout 2012.  (Ex. E).  Exhibit E—Bates-labeled Simclar 9162-9175— details Project Heat discussions between Simclar, Balmoral (Robin Nourmand), and Mark Allen.  In that document, the parties identified total assets of over $44 million against bank debt of $9,309,000 owed to Bank of Scotland.
>
> 16. It was the alleged foreclosure of the $9 million line of credit which was the impetus for the transfer of over $44 million of assets to Balmoral.  This transfer was made at a time when Simclar was undisputably a debtor (as evidenced by SMI's claims and the final judgment entered in the underlying case), owing $3,753,369.94 to SMI.  The transfer was clearly collusive and made for the purpose of avoiding debts to creditors such as SMI.
>
> 17. Without notice to its creditors or any attempt to address its known liabilities, Simclar transferred its assets to Balmoral on October 18, 2012.  The company immediately began operations as Concurrent Manufacturing, LLC.  The transition to the new name is clearly the result of collusive activity between Simclar's officers, Simclar's lender, and the claimed current owner of Simclar, Balmoral Funds LLC, by and through Concurrent Manufacturing Solutions, LLC, a special purpose entity set up for the acquisition.
>
> 18. Simclar received less than reasonably equivalent value in the transfer.

Compl. ¶¶ 15-18.

In support of its allegation that Balmoral acquired Simclar's assets and participated in collusive activity to avoid payment of the judgment, Plaintiff attaches to its pleadings a press release from Balmoral dated October 19, 2012.  *See* Ex. D to Compl.  The press release is titled "Balmoral Funds Announces Acquisition of Simclar's North American Contract Electronic Manufacturing Assets; New Executives Installed at the Rebranded Company, Concurrent Manufacturing Solutions."  *Id.* at Ex. D.  The Press Release states in relevant part:

> Balmoral Funds is pleased to announce that it has acquired the assets of Simclar, Inc. in Hialeah, Florida; Ozark, Missouri; and Matamoros, Mexico.  Going forward, the new company will be known as Concurrent Manufacturing Solutions LLC.  Balmoral plans to invest in capital equipment, facility improvements, process improvements and working capital, among other areas, in order to improve and grow Concurrent's business.
>
> . . . Concurrent will locate its business headquarters in Hialeah, FL and operate facilities at the present locations of the acquired assets in Florida, Missouri, Texas and Matamoros, Mexico.
>
> * * * *
>
> **About Balmoral Funds**: Balmoral Funds has over $100 million of assets under management focused on investing in corporate carve-outs, restructurings and other special situations.

*Id.*

Plaintiff further alleges that contemporaneously with Simclar's filings in response to Judge Ferguson's show cause order informing the court that Simclar had ceased all business operations, Simclar advised its customers that it was merely operating under a new name, and that its management remained intact, it used the same operating account, retained the same employees, same phone numbers, and same locations.  *Id.* ¶ 14 and Ex. C.  In support, Plaintiff attaches to its pleadings a letter it received from Simclar dated October 19, 2012, in which Simclar states:

Dear Valued Customer:

On October 19, 2012, Concurrent Manufacturing Solutions LLC acquired the assets of Simclar, Inc. and its operations in Hialeah, Florida; Missouri; and Matamoros, Mexico. Effective immediately, we will be doing business under our new legal name, **CONCURRENT MANUFACTURING SOLUTIONS LLC**, and immediately transition from Simclar's former legal company names . . . .

In order to continue to serve you in an efficient manner, we are working to transition the records, accounting and computer systems of our customers, suppliers and partners to our new name, **CONCURRENT MANUFACTURING SOLUTIONS LLC**. We will begin invoicing under the Concurrent name and ask you to place future purchase orders and make payments accordingly beginning on October 20, 2012.

Please note that tax identification and credit reference numbers have changed and will require an update in your accounting systems. **Banking instructions have not changed except for the name change**. Note also that there is no need to change the existing vendor codes or references at this time. This will ensure the transition is as seamless as possible.

*Id.* at Ex. C.

Plaintiff also attaches to its pleadings documents produced during discovery in *Simclar I*, which Plaintiff alleges show that as early as April 2012, Balmoral was engaging in a plan, code-named "Project Heat," to acquire Simclar's assets. *See* Ex. E to Compl. In that document, the parties identified Simclar's total assets in 2009 as over $44 million against bank debt of $9,309,000 owed to Bank of Scotland. *See id.* The documents also identify a Simclar facility in Brownsville, Texas with inventory of over $2 million in 2009 and over $3 million in 2010. *Id.*

As a result of the alleged fraudulent transfer of assets, Plaintiff brought this lawsuit on July 16, 2014, against Simclar, Concurrent, and Balmoral.[1] Plaintiff alleges the foreclosure, sale, and

---

[1] In its original complaint, Plaintiff alleged the court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship was present and the amount in controversy exceeded $75,000, exclusive of interest and costs. *See* Pl.'s Orig. Compl. ¶ 6 (Doc. 1). On April 30, 2015, as part of its independent duty to determine the existence of federal subject matter jurisdiction, the court entered an order identifying numerous jurisdictional defects in Plaintiff's Complaint and allowed Plaintiff to file an amended complaint. *See* Order (Doc. 25).

transfer of Simclar's assets to Balmoral and Concurrent constitutes a fraudulent transfer under TUFTA.  Plaintiff alleges that Simclar made the transfer for far less than reasonably equivalent value, that the transfer bears the marks of collusion, and that at the time of the transfer Simclar was insolvent or was rendered insolvent as a result of the transfer.  Plaintiff seeks to avoid the transfer under TUFTA and recover property or the value of property ultimately transferred to Concurrent, Concurrent's affiliates, or third parties for the benefit of Simclar or Concurrent in the amount of its judgment in *Simclar I*, with interest.  In addition to its fraudulent transfer claim, Plaintiff brings claims for successor liability (*see* Compl. ¶¶ 43-52), and unjust enrichment (*id.* ¶¶ 53-57).  Plaintiff also seeks compensatory damages, restitution, exemplary damages, costs, and attorney's fees.  *Id.* at 10-11 (Prayer for Relief).

On September 11, 2014, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  Specifically, Defendants argue that all claims should be dismissed for two reasons:

> First, all claims should be dismissed with respect to Balmoral for lack of personal jurisdiction and because Balmoral received no transfers or value that SMI seeks to recover by its suit.  Second, the claims against Concurrent should be dismissed because they do not state sufficient factual allegations such that, if taken as true, the Court can draw the reasonable inference that either Balmoral or Concurrent [is] liable on any of the stated causes of action.

---

On May 8, 2015, Plaintiff filed an Amended Complaint.  *See* Doc. 26.  On May 12, 2015, finding that Plaintiff had failed to cure the pleading deficiencies identified by the court, the court dismissed the case without prejudice for lack of subject matter jurisdiction.  *See* Order (Doc. 27).  On June 9, 2015, Plaintiff filed a motion asking the court to reconsider its dismissal order.  Following further briefing and another court order on the issue (Docs. 30, 37, 38), the court reopened the case, concluding that complete diversity of citizenship existed and that it therefore had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) to entertain this matter.  *See* Order (Doc. 39).

Defs.' Br. in Supp. of Mot. to Dis. 2 ("Defs.' Br."). Having been fully briefed, Defendants' Motion

to Dismiss is ripe for consideration. The court will first address the motion to dismiss all claims

against Balmoral for lack of personal jurisdiction.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

### A.     Legal Standard — Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham*

*v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192

(5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff

may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is

proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and*

*Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*,

884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving

affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized

methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits

must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

After a plaintiff makes its  prima facie case, the burden then shifts to the defendant to present "a

compelling case that the presence of some other consideration would render jurisdiction

unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute

confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with

due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Accordingly, because the court is deciding the motion to dismiss without an evidentiary hearing, the court must decide whether Plaintiff has made a prima facie showing (1) that Balmoral purposefully directed its activities at residents of the forum, and (2) that this litigation results from alleged injuries that arise out of or relate to Balmoral's activities directed at the forum.

### B.    Analysis

In support of its motion to dismiss for lack of personal jurisdiction, Balmoral argues that "as a third party to a foreclosure[,] [it] cannot be held to specific jurisdiction in Texas because it took no action purposefully directed at Texas or that took advantage of the benefits or protections of its laws." Defs.' Br. 6. Balmoral also argues that Concurrent and Balmoral are separated by three intermediate entities and, therefore, Concurrent's contacts with Texas cannot be imputed to

Balmoral.  *Id.* ("While Concurrent has a place of business in Texas, Balmoral and Concurrent are

independent companies.")  Balmoral relies on the declaration of Robert Nourmand, a Principal at

Balmoral, who avers that:

> Balmoral is a California limited liability company.  Its principal place of business is in Los Angeles, California.  Balmoral has no office, place of business, employees, agents, or other presence in Texas.  All of Balmoral's employees are California residents.  Neither I nor any other constituent of Balmoral regularly conducts business in Texas.  Balmoral has no personal or real property in Texas, no bank account, and no other presence in Texas.

Defs.' App. 3 (Decl. of Robert Nourmand ¶ 6).  Nourmand further avers that:

> In October 2012, Concurrent purchased many of the assets of Simclar, Inc. from Bank of Scotland, plc—a British bank located in Edinburgh, Scotland—at a private Article 9 foreclosure sale.  Concurrent purchased the assets through an Article 9 purchase agreement to which Concurrent and Bank of Scotland were the only parties.  Through its agent, Concurrent handled all negotiations related to the foreclosure sale.  Balmoral did not acquire any of the assets that Concurrent purchased at the foreclosure sale.  As a result of the foreclosure sale, Concurrent obtained a lease on a small warehouse in Brownsville, Texas.

*Id.* (Decl. of Robert Nourmand ¶ 7).

In response to Balmoral's assertion that it was never a transferee of Simclar's assets and

personal jurisdiction is lacking, Plaintiff relies on the Declaration of Peter J. Harry, Plaintiff's

original trial counsel in *Simclar I*, and exhibits to his Declaration, including an October 19, 2012

press release (also attached to Plaintiff's Amended Complaint as Ex. D) titled "Balmoral Funds

Announces Acquisition of Simclar's North American Contract Electronic Manufacturing Assets;

New Executives Installed at the Rebranded Company, Concurrent Manufacturing Solutions."  Decl.

of Peter J. Harry ¶ 4 and Ex. 2.  The Press Release states in relevant part:

> Balmoral Funds is pleased to announce that it has acquired the assets of Simclar, Inc. in Hialeah, Florida; Ozark, Missouri; and Matamoros, Mexico.  Going forward, the new company will be known as Concurrent Manufacturing Solutions LLC.  Balmoral

> plans to invest in capital equipment, facility improvements, process improvements and working capital, among other areas, in order to improve and grow Concurrent's business.
>
> . . . Concurrent will locate its business headquarters in Hialeah, FL and operate facilities at the present locations of the acquired assets in Florida, Missouri, Texas and Matamoros, Mexico.

*Id.*  In further response to the motion to dismiss, and in support of its assertion that this court has specific jurisdiction over Balmoral, Plaintiff contends that specific jurisdiction exists because Balmoral's conduct amounts to an intentional tort intended or highly likely to harm Plaintiff in Texas, its state of residence.[2]  Specifically, Plaintiff argues:

> Here, Balmoral has reached out and purchased the assets of Simclar through a private foreclosure sale.  Balmoral's purchase of Simclar's asserts and placement of those asserts in Concurrent has allowed Concurrent to gain business across its operating facilities. Concurrent maintains multiple operating facilities, including one in the State of Texas.  Balmoral maintains ownership of Concurrent as evidence by the transfer of assets.  Additionally, Balmoral's purchase of Simclar's assets gave rise to this lawsuit.  Further, this Court has an equitable interest in enforcing its own prior judgment, and therefore, notions of fair play and substantial justice will not be offended by this court exercising jurisdiction.

Br. in Supp. of Pl.'s Resp. in Opp'n to Defs.' Mot. to Dis. 5 ("Pl.'s Resp.") (internal citations to pleadings and appendix omitted).

In its reply brief, Balmoral argues that Plaintiff's reliance on the Declaration of Peter J. Harry and the October 19, 2012, Balmoral press release "is hardly enough to controvert the clear evidence adduced by Robin Nourmand's Declaration."  Defs.' Reply 4.  Balmoral also points to the asset transfer agreement showing the assets were purchased by Concurrent from Bank of Scotland.  *See id.*

---

[2] Although Plaintiff makes alternative arguments in support of jurisdiction, because the court finds this argument dispositive, the court need not reach those arguments, nor consider Defendants' arguments in opposition to the alternate arguments.

**Page 12 - Memorandum Opinion and Order**

Having reviewed the parties' legal arguments, jurisdictional evidence, and applicable law, the court determines that Plaintiff has made a prima facie showing sufficient to allow this court to exercise specific jurisdiction over Balmoral.  Taking all uncontroverted allegations in the pleadings as true, and resolving all factual disputes in Plaintiff's favor, as the court must, Plaintiff has made a prima facie showing that all or substantially all of Simclar's assets (including a facility in Brownsville, Texas) were transferred to Balmoral as part of a scheme to prevent Plaintiff, a Texas creditor, from collecting its Texas judgment.  The court rejects Balmoral's suggestion that the court should weigh the evidence in its favor at this procedural juncture.  Notwithstanding Balmoral's reliance on Nourmand's Declaration and the asset purchase agreement to prove that Balmoral never received any assets, the pleadings, the Declaration of Peter J. Harry, and the October 19, 2012 press release show otherwise.  The court remains mindful that, although the nonmoving party bears the burden of establishing a prima facie case of personal jurisdiction, "when a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case . . . the nonmoving party need only make a prima facie showing, and the court must accept as true the non-mover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999); *see also Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (stating that court must "accept as true the uncontroverted allegations in the complaint and resolve in favor of plaintiff any factual conflicts.").

Case law, including recent Fifth Circuit decisions, supports the court's exercise of personal jurisdiction over Balmoral.[3]  Although the mere forseeability of injury in a state is not enough to

---

[3] The court notes the dearth of case law cited by the parties.  The court has had to expend its time and scarce judicial resources to compensate for the parties' lack of citations to case law, which unnecessarily delayed its ruling.

establish personal jurisdiction in that state, *Burger King Corp.*, 471 U.S. at 474, intentional conduct designed to cause harm in the forum state is a basis for finding minimum contacts. *Calder v. Jones*, 465 U.S. 783, 787-90 (1984) (holding that the defendants must "reasonably anticipate being haled into court [in the forum state] because "their intentional, and allegedly tortious actions were expressly aimed at" the forum state and "they knew the brunt of th[e] injury would be felt" in the forum state.).   In *Mullins v. TestAmerica, Inc.*, a case where a Texas creditor sued a debtor and subsequent recipients of funds allegedly transferred fraudulently under TUFTA, the Fifth Circuit upheld the district court's finding of personal jurisdiction over a party that had no contacts with the forum state, Texas, other than its involvement in a fraudulent transfer scheme that affected "a known, major creditor in Texas whose right to payment arises out of contacts that share a strong connection with Texas." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009).   In so ruling, the Fifth Circuit cited the *Calder* "effects" test, which it summarized as allowing "an act done outside the state that has consequences or effects with the state [to] suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* at 400 (citation omitted).[4] Similarly, the court finds persuasive a recent unpublished decision, in which the Fifth Circuit reversed the district court, and held that personal jurisdiction over out-of-state defendants was present where plaintiff alleged that defendants allegedly participated in a scheme to fraudulently transfer assets to prevent a Texas creditor/plaintiff from collecting a pre-exiting Texas judgment in

---

[4] Importantly, the Fifth Circuit in *Mullins* did not categorically hold that personal jurisdiction in the state where a complaining creditor resides exists whenever a "non-resident defendant's receipt of assets [is] transferred with an intent to hinder, delay, or defraud [that] creditor," nor did the court hold that the *Calder* "effects" test supplanted the "need to demonstrate minimum contacts that constitute purposeful availment[.]" *Mullins*, 564 F.3d at 400.   Instead, the Fifth Circuit reasoned in *Mullins* that involvement in a fraudulent transfer that targeted a specific entity in the forum state over a contract linked to the forum state could create personal jurisdiction over the individual. *Id.* at 402.

**Page 14 - Memorandum Opinion and Order**

violation of TUFTA.  *See Dontos v. Vendomation NZA Ltd.*, 582 Fed. App'x 338, 345-48 (5th Cir.

2014); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009)

(When a nonresident defendant receives Texas property for the purposes of defrauding a Texas

resident, the nonresident defendant is subject to suit in Texas courts.).

 For the reasons set forth directly above, the court concludes that Plaintiff has made a prima

facie showing that Balmoral established minimum contacts with Texas sufficient for this court to

exercise specific jurisdiction over it.  Plaintiff has alleged that Balmoral intentionally impaired its

ability to collect on its Texas judgment against Simclar by colluding to transfer Simclar's assets via

a private foreclosure sale, rendering Simclar insolvent or without sufficient funds to pay the

judgment awarded Plaintiff by Judge Furgeson in *Simclar I*.  Accepting Plaintiff's allegations as

true, and resolving factual conflicts in Plaintiff's favor, the court concludes that Plaintiff has

sufficiently pleaded facts that establish Balmoral's minimum contacts with Texas, and that

Plaintiff's fraudulent transfer claim, successor liability claim and unjust enrichment claim arise out

of those minimum contacts.  In addition, the court finds that Balmoral has not presented a

"compelling case" that exercising jurisdiction over it would be unreasonable under the

circumstances.  *See Burger King*, 471 U.S. at 477.  Accordingly, the court will deny Defendants'

motion to dismiss all claims against Balmoral for lack or personal jurisdiction.

**III.** **Motion to Dismiss for Failure to State a Claim**

 **A.** **Legal Standard — Fed. R. Civ. P. 12(b)(6)**

 To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517

F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier,* 509 F.3d at 675; *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys.*

*Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

**B.      Analysis**

As already stated, Plaintiff alleges that the transfer of Simclar's assets to Balmoral and Concurrent amounted to fraudulent conveyances, both "actual" and "constructive," under TUFTA, Tex. Bus. & Com. Code §§ 24.005(a)(1); 24.005(a)(2), 24.006(a).   Plaintiff seeks to avoid the transfer under TUFTA and recover the amount of its judgment in *Simclar I*, with interest.   Plaintiff also brings claims for successor liability and unjust enrichment.

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, Defendants contend Plaintiff's fraudulent transfer claim should be dismissed because: (1) an Article 9 foreclosure sale is an improper basis for a claim under TUFTA; (2) Balmoral was never a transferee of any assets; and (3) Plaintiff alleges no plausible claim for actual or constructive fraudulent transfer under TUFTA.  *See* Def.'s Br. 8-21. Defendants further contend that Plaintiff's successor liability claim should be dismissed because "the Complaint simply pleads no facts from which the Court could draw a reasonable inference that either Concurrent of Balmoral are liable as successors to Simclar under applicable Florida law."  *Id.* at 22.   Finally, Defendants argue that Plaintiff's unjust enrichment claim should be dismissed "because SMI never provided any products or services to Balmoral or Concurrent."  *Id.* at 23.   The court turns first to Defendants' motion to dismiss Plaintiff's fraudulent transfer claim.

*1.      Plaintiff's Fraudulent Transfer Claim*

Defendants argue that Plaintiff's fraudulent transfer claim should be dismissed for failure to state a claim under TUFTA.  Prior to examining the specific arguments, the court sets forth the applicable law.

a.       TUFTA

The applicable state law is TUFTA, Tex. Bus. & Com. Code § 24.001 *et seq.*[5] "The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach." *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 767 (S.D. Tex. 2013) (internal quotations and citations omitted). TUFTA first requires that a "transfer [is] made or [an] obligation [is] incurred by a debtor." Tex. Bus. & Com. Code § 24.005(a). TUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." *Id.* § 24.002(12). Thus, for a transfer to occur, it must include an "asset." TUFTA defines "asset" as all property of the debtor but expressly excludes "property to the extent it is encumbered by a valid lien." *Id.* § 24.002(2)(A). "A lien includes a security interest." *Id.* § 24.002(8).

TUFTA recognizes two categories of voidable fraudulent transfers: actual fraudulent transfers, Tex. Bus. & Com. Code § 24.005(a)(1); and constructive fraudulent transfers, *id.* §§ 24.005(a)(2), 24.006(a). Actual fraud occurs when "the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 24.005(a)(1). TUFTA provides a nonexclusive list of eleven "badges of fraud" that indicate whether a debtor actually intended to defraud a creditor under TUFTA. *See U.S. Bank, N.A., v. Verizon Commc'ns, Inc.*, 761 F.3d 409,

---

[5] In the First Amended Complaint, Plaintiff alleges fraudulent transfer under both TUFTA and the Florida Uniform Fraudulent Transfer Act ("FUFTA"). *See* Compl. ¶¶ 32, 41. In their legal briefing, however, both parties cite TUFTA and cases decided under TUFTA. As both states have enacted UFTA, and the applicable analysis is essentially the same under TUFTA and FUFTA, the court need not engage in a choice-of-law analysis, and, like the parties, applies TUFTA. *See, e.g., Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary."); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004) ("[W]e must first decide whether Texas law conflicts with the laws of other interested states, as there can be no harm in applying Texas law if there is no conflict.").

435 (5th Cir. 2014).  A transfer is not voidable if the recipient took it in good faith and for value.

Tex. Bus. & Com. Code § 24.009.

Constructive fraud occurs when a transfer was made without the debtor receiving a reasonably equivalent value in exchange and the debtor either:

> (A) was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or

> (B) intended to incur, or believed or unreasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pat as they became due.

*Id.* § 24.005(a)(2).  "For purposes of [constructive fraud], a person gives a reasonably equivalent value if the person acquired an interest of the debtor in an asset pursuant to a regularly conducted, *noncollusive* foreclosure sale."  *Id.* § 24.004(b) (emphasis added).

"In general, a determination of liability under TUFTA is a two-step process: first, a finding that a debtor made an actual fraudulent transfer or a constructive fraudulent transfer; and second, recovery for that fraudulent transfer, or its value, from the transferees."  *Spring Street Partners v. LAM*, 730 F.3d 427, 436 (5th Cir. 2013) (internal citations omitted).

> *b.*     *Discussion*

To reiterate, Defendants move to dismiss Plaintiff's TUFTA claims on three separate and independent grounds, as follows: (1) an Article 9 foreclosure sale is an improper basis for a claim under TUFTA; (2) Balmoral was never a transferee of any assets; and (3) Plaintiff fails to allege a plausible claim for actual fraudulent transfer or constructive fraudulent transfer under TUFTA.  *See* Def.'s Br. 8-21.  The court addresses these arguments in turn.

i.       The "Transfer" of an "Asset" under TUFTA

Defendants first argue that "SMI's Complaint fails to state a claim upon which relief can be granted for the simple reason that, under TUFTA, an Article 9 foreclosure sale of personal property by a secured party, where the property is encumbered by a valid lien, is not a 'transfer' within the meaning of [TUFTA]." Defs.' Br. 9. In support of this proposition, Defendant cites *Yokogawa Corporation of America v. Skye International Holdings, Inc.*, 159 S.W.3d 266 (Tex. App.—Dallas 2005, no pet.). In *Yokogawa*, which also involved a foreclosure sale, the court concluded, "Because the property . . . purchased at the foreclosure sale was encumbered by a valid lien, TUFTA is inapplicable." *Yokogawa*, 159 S.W.3d at 269. Defendants argue that the Complaint "admits that Bank of Scotland had a valid lien against all or substantially all of Simclar's assets[,]" and "does not allege that any of the assets sold to Concurrent were unencumbered by the lien." Defs.' Br. at 10. Thus, Defendants conclude that the "Complaint cannot demonstrate under any factual scenario that the assets Concurrent purchased at the foreclosure sale were 'assets' under TUFTA, nor that there was any 'transfer' of those 'assets,' both of which are fundamental to bringing a claim under [TUFTA]." *Id.* (citing *Yokogawa*, 159 S.W.3d at 269). Defendants also argue that the "Complaint does not allege any facts that would tend to show the foreclosure sale was 'collusive' in any way." *Id.*

In response, Plaintiff does not dispute that Bank of Scotland had a valid lien, but it argues that it has sufficiently alleged that most of the assets transferred through the foreclosure sale were not exempt under TUFTA's definition of "asset." Pl.'s Resp. 8. Plaintiff argues that Defendants fail to take into account Plaintiff's allegations concerning the disparity between the value of the assets foreclosed and the debt owed to the Bank of Scotland. *Id.* Relying on documents attached

to its First Amended Complaint, Plaintiff alleges that Bank of Scotland held a secured debt valued at $9 million against collateral valued at approximately $44 million. Compl. ¶ 16 and Ex. E. In further support of its argument that it has adequately alleged a transfer of an "asset" under TUFTA, Plaintiff cites to a 2012 appellate court case decided after *Yokogawa*, where the court rejected a debtor's reliance on *Yokogawa*. *See Citizens Nat'l Bank v. NXS Construction, Inc.*, 387 S.W.3d 74, 83 n.9 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In that case, a creditor sought to void a debtor's transfer of assets that were subject to a third-party lien, arguing that, under *Yokogawa*, property encumbered by a lien is not an asset for purposes of TUFTA regardless of the amount of the lien. Rejecting the Debtor's argument, the court held that "the value of property in excess of a valid lien encumbering the property is an 'asset' as defined by [T]UFTA." *Id.* at 83. The court reasoned, "[I]t would be absurd to conclude the Legislature intended to permit debtors to avoid unsecured creditors by transferring property encumbered by a lien worth a fraction of the property's value." *Id.* The court further noted that the *Yokogawa* court did not even discuss whether the value of the property exceeded the amount of the lien. *Id.* at n.9. Ultimately, the court excluded from TUFTA only the value of the property transferred below the value of the lien. *Id.* at 83; *see also Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 610 n.6 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that under the plain meaning of Tex. Bus. & Com. Code § 24.002(2)(A), the value of the property in excess of a valid lien encumbering the property is an "asset").[6]

---

[6] In their Reply, Defendants state that in the Article 9 context, it is not the value of the collateral in relation to the value of the lien that is relevant under TUFTA, but rather the value of the lien versus the payment received by the secured party at the foreclosure sale. Reply at 6. According to Defendants, Plaintiff never alleges the value that Simclar's assets sold for at the auction. *Id.* The court need not consider this argument, as it was raised for the first time in Defendants' Reply brief. *See, e.g., Lacher v. West*, 147 F. Supp. 2d 538, 540 (N.D. Tex. 2001) (Lindsay, J.) (noting

The court agrees with Plaintiff that the Complaint sufficiently alleges a transfer of an "asset" covered by TUFTA, that is, all property of the debtor excluding property "encumbered by a valid lien." Tex. Bus. & Com. Code § 24.002(2)(A); *see also Citizens Nat'l Bank of Texas*, 387 S.W.3d at 83 (excluding from TUFTA only the value of the property transferred below the value of the lien). Specifically, Plaintiff has sufficiently alleged a disparity between the amount of the security debt and the value of Simclar's assets.   Accordingly, the court will deny Defendants' motion to dismiss Plaintiff's TUFTA claim based on its argument that Plaintiff has failed to allege "transfer" of an "asset."

### ii.      A "Transferee" under TUFTA

Defendants next argue that Plaintiff's complaint should be dismissed because "Balmoral did not receive any assets" and therefore "there [is] no transfer giving rise to liability on the part of the [defendant] under the . . . fraudulent transfer statutes."   Defs.' Br. 11-12 (quoting *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 166 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). Defendants further contend that Plaintiff "does not plead sufficient factual allegations from which the Court could reasonably infer that Balmoral, rather than Concurrent, obtained dominion or control over Simclar's assets."   *Id.* at 14.   In response, Plaintiff contends that the Complaint "alleges sufficient facts to support a finding that Balmoral is a 'transferee' of Simclar's assets."   Pl.'s Resp. 10.   The court agrees.

As previously noted, determination of liability under TUFTA is a two-step process: "first, a finding that a debtor made an actual fraudulent transfer or a constructive fraudulent transfer; and

---

that the court "does not consider arguments raised for the first time in a reply brief."). In any event, Plaintiff's allegations are sufficient at this stage of the proceedings to allege a sale of assets for less than reasonably equivalent value.

second, recovery for that fraudulent transfer, or its value, from the transferees." *Spring Street Partners*, 730 F.3d at 436.   TUFTA does not define a "transferee."   Under case law, a party is a transferee if it has "legal dominion or control" over the assets in question. *Newsome*, 940 S.W.2d at 166.   Factors a court should consider in determining whether a party is a "transferee" include whether the party has complete legal title, unfettered discretion to pay creditors, and the lack of any agreement restricting access to or use of the funds. *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, 2011 WL 860529, at *12 (W.D. Tex. Mar. 8, 2011).   "A recipient of funds is not a transferee, for example, if it holds the funds only in a fiduciary capacity, and has no legal right to put the funds to its own use." *Id.* (internal punctuation and citation omitted).

Having reviewed the parties' arguments and under applicable law, the court concludes that Plaintiff has alleged sufficient facts to support its claim that Balmoral had title to Simclar's assets following the foreclosure sale, and was therefore a "transferee" under TUFTA.   In the October 19, 2012 press release Plaintiff attaches to its Complaint (see Ex. D), Balmoral notifies the public that it acquired Simclar's assets.   A reasonable inference can be drawn that upon such acquisition, Balmoral had control of the assets.   Plaintiff also alleges that Balmoral chose to place those assets in a separate entity set up for the acquisition, Concurrent, indicating dominion or control of the transferred assets. Compl. ¶ 17.   Based on its review of the pleadings, and viewing all well-pleaded facts as true, the court will deny Defendants' motion to dismiss Plaintiff's TUFTA claim based on its argument that Plaintiff has failed to allege that Balmoral was a "transferee" of the assets.

### iii.    Actual and Constructive Fraudulent Transfer

Finally, Defendants seek dismissal of Plaintiff's fraudulent transfer claim, arguing that it has failed to state a plausible claim for actual or constructive fraud under TUFTA.   Plaintiff counters

that  it has adequately alleged actual and constructive fraudulent transfer sufficient to survive Defendants' motion to dismiss.

Accepting all well-pleaded facts in Plaintiff's First Amended Complaint as true and viewing them in the light most favorable to Plaintiff, *see Sonnier,* 509 F.3d at 675, the court concludes that Plaintiff has stated a plausible claim for actual fraudulent transfer under Tex. Bus. & Com. Code § 24.005(a)(1); and constructive fraudulent transfer, *see id.* §§ 24.005(a)(2), 24.006(a).  *See* Compl. ¶¶ 27-42 and Exhibits thereto; Pl's Resp. Br. 10-13.

With regard to its claim of actual fraudulent transfer, Plaintiff has adequately alleged that Simclar made the transfer with the actual intent to defraud Plaintiff, and has adequately alleged several "badges of fraud," including: (i) the debtor remained in control of the transferred assets after the transfer; (ii) the transfer was concealed; (3) before the transfer was made, the debtor had been sued; (4) the transfer was substantially all of the debtor's assets; and (5) the transfer occurred shortly before a substantial debt was incurred.  *See* Tex. Bus. & Com. Code § 24.005(b)(2), (3)-(5), (10); *see also Spring Street Partners*, 730 F.3d at 437 and n.4 (quoting *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008) (listing the "non-exclusive list of eleven factors, commonly known as 'badges of fraud,' that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA.")).

A transfer is constructively fraudulent if it was made without the debtor receiving a reasonably equivalent value in exchange and the debtor either:

> (A) was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or

(B) intended to incur, or believed or unreasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pat as they became due.

Tex. Bus. & Com. Code § 24.005(a)(2).  With regard to its claim of constructive fraudulent transfer, Plaintiff has adequately alleged that Simclar transferred all or substantially all its assets to Balmoral, a disparity in value between the foreclosed assets and the debt owed by Simclar, and that as a result of the transfer Simclar was rendered insolvent and unable to pay Plaintiff's judgment.  Plaintiff has also attached to its pleadings as Exhibit E an agenda and Simclar balance sheet for "Project Heat," listing Simclar's assets as much higher than the debt it owed Bank of Scotland.  Further, in response to Judge Fugeson's show cause order, Simclar informed the court that it had ceased doing business after transferring its assets in a private sale.  *See* Compl. at Ex. B.

Based on these allegations, the court will deny Defendants' motion to dismiss Plaintiff's TUFTA claims based on its argument that Plaintiff has failed to allege a plausible claim for actual fraudulent transfer and constructive fraudulent transfer.

### 2.  *Plaintiff's Claim of Successor Liability*

Defendants move to dismiss Plaintiff's claim of successor liability, arguing that Plaintiff has failed to allege a plausible basis for exercising successor liability as to either Balmoral or Concurrent.  Plaintiff counters that at this stage of the proceedings the court must view all factual allegations as true, and that is has pleaded sufficient facts to support its successor liability claim.  The court agrees.

Florida law "does not impose the liabilities of the selling predecessor upon the buying successor company" unless "(1) the successor expressly or impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the

predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor."

*Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982).[7]

"The imposition of liability upon a successor corporation is based on the notion that no corporation should be permitted to commit a tort or breach of contract and avoid liability through corporate transformation in form only." *Laboratory Corp. of Amer. v. Prof'l Recovery Network*, 813 So. 2d 266, 269 (Fla. Dist. Ct. App. 2002) (citation omitted). Under Florida law, a "mere continuation" of the predecessor "occurs when the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Id.* at 270. "While having common attributes does not automatically impose liability on a successor corporation, merely repainting the sign on the door and using new letterhead certainly gives the appearance that the new corporation is simply a continuation of the predecessor corporation." *Id.*

The court concludes that Plaintiff has sufficiently alleged successor liability under the third prong of Florida's test for successor liability, namely, that Balmoral and Concurrent are a mere continuation of Simclar. Plaintiff has alleged that Defendants entered into a collusive agreement to avoid Simclar's debts to Plaintiff by transferring its assets via a private foreclosure sale; that Simclar informed its customers in writing that it was merely operating under a "new legal name" for Simclar, Concurrent; that Simclar (now renamed Concurrent) retained many of the same employees; that its operations continued in the same location; that it used the same telephone numbers; and that shareholders of Simclar were or became members of Balmoral and Concurrent.

---

[7] Both parties agree that Florida law governs the successor liability claim. As Simclar was a Florida corporation at the time it was dissolved, the court agrees with the parties and concludes that Florida substantive law applies. *See* Restatement (Second) Conflict of Laws § 302 (under general choice of law principles, the law of the state of incorporation generally applies to successor liability).

*See* Compl. ¶¶ 44-51 and Exs. C-E thereto.  Plaintiff argues, "These actual allegations, when taken as true and combined with reasonable inferences, show that it is plausible that Defendants' collective actions were, in substance, a mere continuation of the predecessor entity . . . ." Pl.'s Resp. 15.[8]  The court agrees.

The court concludes that Plaintiff has sufficiently alleged a claim of successor liability under Florida law.  Accordingly, the court will deny Defendants' motion to dismiss this claim.

### 3.    *Plaintiff's Claim of Unjust Enrichment*

Defendants move to dismiss Plaintiff's unjust enrichment claim.  In support, Defendants argue that Plaintiff fails to allege it ever provided any products or services to either Balmoral or Concurrent, or that either Defendant ever sought a benefit from Plaintiff.  Defs.' Br. 23-25.

Unjust enrichment is not an independent cause of action under Texas law. *Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 848 n.18 (N.D. Tex. 2011) (Fitzwater, J.) (and cases cited therein).  Instead, Texas courts treat unjust enrichment as a claim for money had and received. *Id.* "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  "The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him or her to retain ought to make restitution." *Casstevens v. Smith*, 269 S.W.3d 222, 229-30 (Tex. App.—Texarkana 2008, pet. denied) (citations omitted); *see*

---

[8] Because the court has concluded that Plaintiff has alleged a plausible claim of successor liability based on the theory that the successor is a mere continuation of the predecessor, *see Bernard*, 409 So. 2d at 1049, the court need not consider Plaintiff's alternate arguments to support imposition of successor liability on Defendants, or Defendants' refutations of these alternate arguments.

*also Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) (Unjust enrichment is "the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.").

In support of their motion to dismiss the unjust enrichment claim, Defendants rely on *Casstevens v. Smith*, *supra*.  In that case, a homeowner whose house was foreclosed upon sought to recover from the purchasers at the foreclosure sale on an unjust enrichment theory. 269 S.W.3d at 229-30.  The court held that the homeowner had no unjust enrichment claim because a "party must have some connection with the wrongdoing in order for a plaintiff to recover, and in this case, as [the purchasers] acted in accordance with controlling statutory law . . ., we cannot agree that this evidence provides any proof that their actions were such as to justify the application of the doctrine." *Id.* at 230.  In reaching its decision, the court distinguished the case before it from cases where fraud was present.  *See id.*  (noting that in this case "there was no evidence that [the purchasers] committed fraud against [the debtor] in exercising their right of ownership and possession of the house.").

In opposition, Plaintiff argues that:

Factually, *Casstevens* presents a different set of circumstances from the case before this Court.  The transfer that took place in *Casstevens* involved no wrongdoing on the part of [the purchasers].  However, SMI adequately pled in the Complaint that Defendants both have a connection with the wrongdoing.  Specifically, SMI pled that Balmoral purchased the assets of Simclar after developing a plain to avoid payment to creditors, Simclar continued to operate in an almost identical fashion following transfer of the assets, the exchange of values for the assets between Balmoral and Simclar was lopsided, and the transfer resulted in the avoidance of SMI's judgment. Moreover, the declaration of Robin Nourmand, when juxtaposed with the October 19, 2012 press release (apparently also sponsored by Nourmand), establishes conclusively that Balmoral was making purposefully deceptive statements in connection with the transfer.

**Page 29 - Memorandum Opinion and Order**

Pl.'s Resp. 17.

Having considered the parties' legal arguments, Texas law concerning unjust enrichment, and the pleadings, the court concludes that Plaintiff has adequately alleged a claim for unjust enrichment.  Further, the court rejects Defendants' argument that *Casstevens* is dispositive of the issue presented.  As Plaintiff correctly notes, the court in *Casstevens* distinguished the case before it from those cases where one person has gained a benefit from another by fraud, duress, or the taking of undue advantage.  *See Casstevens*, 269 S.W.3d at 230; *see generally Staate v. Miller*, 243 S.W.2d 686, 687-88 Tex. 1951) ("The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong.") (citation omitted).

The court concludes that Plaintiff has sufficiently alleged a claim of unjust enrichment. Accordingly, the court will deny Defendants' motion to dismiss this claim.

## IV.    Conclusion

For the reasons herein stated, the court **denies** Balmoral Funds, LLC and Concurrent Manufacturing Solutions, LLC's Motion to Dismiss (Doc. 13).

**It is so ordered** this 30th day of July, 2015.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge